Milligan, J.,
delivered the opinion of the court:
The claimant seeks by this action to recover the net proceeds of 2,633 bales of cotton, which he alleges were captured by the United States military at Savannah, Georgia, and afterward sold in New York, and the proceeds covered into the Treasury.
The facts on which the case rests are found to be as follows:
Some time about the years 1847 to 1849, Andrew Low, the claimant, and Charles Green, entered ¡into¡jpartnership, under the firm-name of Andrew Low & Go. They continued in business until the year 1861, when, by mutual consent, the partnership was dissolved. Green went out of the firm, but Low con tinned business alone, under the same firm-name of “ Andrew Low & Co.”
By the terms of the dissolution Low was constituted the liquidating partner, and charged with the duty of collecting in the assets, paying off the debts, and winding up the business of the concern. Green had nothing more to do with it; and on the 2d of December, 1868, at Savannah, he executed the following receipt:
u Received from Andrew Low, liquidating partner of the late firm of Andrew Low & Go., the sum of sixteen hundred and ninety-one dollars and eighty-seven cents, being balance due and settlement in full of all demands growing out of liquidation of said copartnership of Andrew Low & Go., as per statement — leaving only in remainder of settlement Mr. Green’s one-half undivided interest in wharf property and stores known as Low’s wharf.
u CHARLES GREEN.”
The cotton claimed in this action was bought by Low’s agents employed in the surrounding country, in the years 1862 and 1864, after the dissolution, but in the firm-name of “ Andrew Low & Go.,” under which Low was then doing business alone. It was paid for with claimant’s own means, and it is distinctly shown to have been his individual property when it was seized by the Government.
All the cotton was stored in Savannah, and the greater part of it in claimant’s own warehouses. It was all seized and shipped to New York, and there sold, and the proceeds paid into the Treasury.
*517 There is a discrepancy, however, in the evidence in relation to the number and quality of the bales reported by the military seizing authorities, and the number and kind of cotton shipped and sold in New York; but this discrepancy is slight, and as it is the duty of the claimant to make his case free from doubt, we feel bound to confine the judgment to the amount of cotton which appears to have reached the Treasury.
The proof abundantly establishes the title in claimant to 2,246 bales upland and 349 sea-island cotton, which were seized by the Dnited States, sold in New York, and the proceeds, as before shown, placed in the Treasury.
There is no satisfactory proof of the claimant’s loyalty. On the contrary, he appears to have been one of the commissioners to negotiate the $15,000,000 Confederate States loan.
On the 7th April, 1865, he took and subscribed the oath of amnesty authorized by the President’s proclamation of the 8th of December, 1863.
. On the foregoing facts, the court hold, as a conclusion of law, that the claimant is entitled to recover the net proceeds of 2,246 bales of upland cotton, at $175.33 per bale, and also the net proceeds of 349 bales sea-island cotton, at $231.79 per bale, making in the aggregate the sum of $474,685.89, for which judgment will be entered.